

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

**************************************************

UNITED STATES OF AMERICA,

No. 5:11-CR-317 (NAM)

v.

SUPERSEDING INDICTMENT
Vio: 18 U.S.C. § 1962(d)
18 U.S.C. § 1959(a)(1)

COUNTY: ONONDAGA

(1) KAHARI SMITH, a/k/a Kiss,
(2) HABAKKUK NICKENS, a/k/a HB,
(3) JEFFREY POWELL, a/k/a Ghost,
(4) KENNETH JACKSON, a/k/a Karome,
(5) TITUS NICKENS, a/k/a Tit,
(6) RIADDA TRAVET, a/k/a Rico,
(7) CHRISTOPHER MIKE, a/k/a Jah or C-Mike,
(8) JERMEERE MCKINNON, a/k/a Hood,
(9) NATHAN KING, a/k/a Nate,
(10) DWAYNE HESTER, a/k/a Black, and
(11) DONALD R. JOHNSON, JR., a/k/a D-Jigga,

Defendants.

**************************************************

THE GRAND JURY CHARGES:

COUNT ONE

THE ENTERPRISE

At all times material to this Indictment:

1. Defendants:

KAHARI SMITH, a/k/a Kiss,
HABAKKUK NICKENS, a/k/a HB,
JEFFREY POWELL, a/k/a Ghost,
KENNETH JACKSON, a/k/a Karome,
TITUS NICKENS, a/k/a Tit,
RIADDA TRAVET, a/k/a Rico,
CHRISTOPHER MIKE, a/k/a Jah or C-Mike,
JERMEERE MCKINNON, a/k/a Hood,
NATHAN KING, a/k/a Nate,

**DWAYNE HESTER, a/k/a Black, and**
**DONALD R. JOHNSON, JR., a/k/a D-Jigga,**

and others, were members and associates of a criminal organization in Syracuse, New York, known as the "V-Not Gang," whose members and associates engaged in acts involving murder, robbery, drug trafficking,and witness tampering, in Onondaga County, within the Northern District of New York and elsewhere.

2. The V-Not Gang, including its leadership, members, and associates, constituted an "enterprise" as defined by Title 18, United States Code, Sections 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact. The enterprise was engaged in, and its activities affected, interstate and foreign commerce. The enterprise was an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## PURPOSES OF THE ENTERPRISE

3. The purposes of the V-Not Gang included, but were not limited to, the following:

a. Enriching the members of the V-Not Gang through, among other things, control of and participation in the distribution of controlled substances in V-Not Gang territory and elsewhere;

b. Maintaining control over V-Not Gang territory;

c. Preserving, protecting, and expanding the power and reputation of the V-Not Gang through the use of intimidation, violence, threats of violence, assaults, attempted murders, and murders;

d. Promoting and enhancing the V-Not Gang, its activities, and the activities of its members and associates; and

e. Exposing and pressuring V-Not Gang members and others who cooperate with law enforcement.

**MANNER AND MEANS OF THE ENTERPRISE**

4. The V-Not Gang operated in a multi-block area on the far south side of the City of Syracuse, New York. The northern border of the V-Not Gang's territory was West Newell Street. The western border was comprised of Valley Drive and streets connected thereto, Barnes Avenue and Seneca Place. The southern border consisted of East and West Seneca Turnpike. The eastern border included Onondaga Creek Boulevard, Ballantyne Road, South Salina Street, Florence Avenue, Monticello Drive and Maywood Drive.

5. From at least 2003 up to approximately 2006, the V-Not Gang's income was derived primarily from the sale of marijuana. As the desire for more money increased, so did the need to control drug sales in other areas outside V-Not Gang territory where some of the gang members resided. In and around 2006, some members of the V-Not Gang began to move their marijuana sales to the area of V-Not Gang territory in and around the 4600 block of South Salina Street, to include Seneca Drive, Crippen Avenue, Orlando Avenue, and Clarence Avenue. They also began to steal large quantities of marijuana from the people of the nearby Onondaga Nation Reservation. Other V-Not Gang members continued their drug sales in the Valley Drive area of the V-Not Gang territory.

6. At some point prior 2006, V-Not Gang members began to distribute cocaine base (crack) in their territory and elsewhere. By 2006, such crack cocaine distribution was commonplace. In or about 2006, the V-Not Gang began to obtain crack cocaine from a source known to V-Not Gang member Silas Collier, a/k/a Slice. V-Not members also began to pool their money to purchase

crack cocaine from this drug source. As a group, they would make large purchases of crack cocaine approximately every two weeks. Upon delivery, the crack would be broken up and distributed amongst the V-Not Gang members based on how much money each person contributed. After Silas Collier, a/k/a Slice, was murdered in May 2007, the V-Not Gang began to use V-Not Gang member Jeffrey Powell's crack cocaine supplier, among others, to continue their drug trafficking business.

7. The major crack cocaine dealers in the V-Not Gang would supply crack cocaine to lower ranking or younger gang members. The lower level dealers, usually around 15 to16 years of age, would then sell to "licks," a slang term used to describe customers who would come into V-Not Gang territory to buy drugs. V-Not Gang members would also sell larger quantities of crack cocaine to customers in other areas of the City of Syracuse. As V-Not Gang members became more successful at selling crack cocaine and marijuana, they elevated their status in the gang by purchasing larger quantities of those drugs and then selling them to other gang members. In turn, the money they received from the other V-Not Gang members and associates were be used to purchase more drugs to continue the drug-dealing-cycle.

8. This cycle of drug dealing continued virtually unabated since 2003, continuing even as multiple gang members were killed or went to prison for gun, drug, and violent crime offenses. The structure of the V-Not Gang members maintaining exclusive control over their territory, in large part to protect their ongoing drug trade, endured despite the killings and arrests.

9. V-Not Gang members guarded the V-Not Gang territory to prevent drug sales by others in the territory or encroachment of any kind by rival gang members. If a non-V-Not Gang member or associate attempted to sell drugs within V-Not Gang territory, either on their own, or in conjunction with a rival gang, they would be summarily dismissed from the area and, likely, be

physically assaulted, stabbed or shot. Additionally, any rival gang members who passed through the V-Not Gang territory, even if they were not selling or attempting to sell drugs, were subject to attacks to ensure that the territory remained firmly under V-Not control.

10. There were several aspects of the V-Not Gang that developed and remained constant throughout the years:

a. V-Not Gang members always used the safety and sanctuary of the gang territory as much as possible to possess drugs and make drug sales, to meet and congregate as a gang to discuss gang-related issues such as retaliating against rival gangs, and to hide from police and rival gangs. One of the places within the V-Not Gang territory where V-Not Gang members routinely congregated was 321 Shirley Drive, in a garage where they have been known to gamble and conduct other gang-related activity. They also routinely congregated in front of the Valley Superette at 614 Valley Drive and the Golden Gate Market at 4619 South Salina Street;

b. V-Not Gang members who happened to be in the area at the time of an encroachment by a rival gang member or unwanted drug dealer, routinely responded with violence to protect the territory, with these responses sometimes being coordinated amongst V-Not Gang members;

c. V-Not Gang members often wrote gang-related graffiti on buildings and schools in their territory. Such graffiti was in the form of the words "V-Not" or "Slice," the latter of which was a form of homage to slain V-Not Gang member Silas Collier, a/k/a Slice;

d. V-Not Gang members on occasion used hand signs to represent gang identity. The V-Not hand sign was meant to convey the letter "V" and was done primarily by opening a wide gap between the middle and ring fingers;

        e. V-Not Gang members routinely armed themselves with firearms in order to: (1) protect their territory and drug trade; (2) project a violent attitude to rival gang members; and (3) retaliate against those who committed acts of violence against V-Not Gang members. V-Not Gang members hid guns at various locations within the gang territory so that they were readily available for gang members to use when necessary. These guns were routinely used by V-Not Gang members to shoot at rival gang members both within V-Not Gang territory and elsewhere. V-Not Gang members also used assault rifles to retaliate against rival gangs;

f. V-Not Gang members had long standing feuds with other street gangs, including Bricktown, O-Block, Elk Block, 110/1500, and various members of gangs from the east side of Syracuse. These feuds resulted in multiple shootings and some murders. V-Not Gang members often used guns to conduct shootings in rival gang territories in furtherance of these gang wars;

g. V-Not Gang members routinely paid tribute to slain V-Not Gang member Silas Collier, a/k/a Slice. Tributes to Collier have taken the form of "R.I.P. Slice" tattoos, clothing, rap music/rap videos and graffiti; and

h. More recently, V-Not Gang members, and those associated with them, utilized social media web sites like Facebook, MySpace, and YouTube to glorify and perpetuate the V-Not Gang through photos, writings, drawings, and at least one gang-related rap video that glorifies the V-Not Gang.

11. V-Not Gang members, especially in the early years of the gang, generally had a familial affiliation with an established gang member, lived in the gang territory at some point, and/or demonstrated a propensity to do one or more of the following: (1) engage in drug trafficking; (2)

protect the gang territory; (3) engage in gang-related violence; or (4) retaliate against rival gangs for acts of violence or disrespect, even if the individual gang member was not the subject of the violence and disrespect. V-Not Gang member's gained respect and stature by demonstrating a proficiency in one or more of these areas.

12. The V-Not Gang continued to operate as a criminal enterprise despite attrition when members were incarcerated for criminal offenses, left the gang, or were killed. Rival gang members and others were aware of the continued existence of the V-Not Gang, the protection of its territory, and its continued criminal operations despite attrition.

## THE RACKETEERING CONSPIRACY

From at least 2003, the exact date being unknown to the grand jury, and continuing thereafter up to the date of the indictment, in the Northern District of New York and elsewhere, the defendants,

**KAHARI SMITH, a/k/a Kiss,**
**HABAKKUK NICKENS, a/k/a HB,**
**JEFFREY POWELL, a/k/a Ghost,**
**KENNETH JACKSON, a/k/a Karome,**
**TITUS NICKENS, a/k/a Tit,**
**RIADDA TRAVET, a/k/a Rico,**
**CHRISTOPHER MIKE, a/k/a Jah or C-Mike,**
**JERMEERE MCKINNON, a/k/a Hood,**
**NATHAN KING, a/k/a Nate,**
**DWAYNE HESTER, a/k/a Black, and**
**DONALD R. JOHNSON, JR., a/k/a D-Jigga,**

being persons employed by and associated with the enterprise known as the V-Not Gang, described in paragraphs 1 through 12 of this indictment, which enterprise engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, knowingly, and intentionally did combine, conspire, confederate, and agree together and with each other and with others known and unknown to the grand jury, to violate Title 18, United States Code, Section 1962(c), that is, to

conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple acts involving:

(1) murder, in violation of New York Penal Law, Sections 125.25, 110.05, and 105.17;

(2) robbery, in violation of New York Penal Law, Sections 160.05, 160.10, and 160.15;

(3) conspiracy to possess with intent to distribute cocaine base (crack) and marijuana, as well as possession with intent to distribute and distribution of cocaine base (crack) and marijuana, in violation of Title 21, United States Code, Sections 841(a) and 846; and

(4) multiple acts indictable under the federal statute prohibiting witness tampering, specifically Title 18, United States Code, Section 1512(b)(3).

It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

**OVERT ACTS**[1]

In furtherance of the conspiracy and in order to affect the objects thereof, the defendants and their co-conspirators, known and unknown to the grand jury, committed and caused to be committed the following overt acts, among others, in the Northern District of New York and elsewhere:

1. On or about August 23, 2005, **TITUS NICKENS,** in the presence of **HABAKUKK NICKENS,** brandished a handgun in the vicinity of 146 West Florence Avenue, Syracuse.

---

[1] The a/k/a's ("also known as") for each of the defendants are not restated in the Overt Acts section.

2. On or about October 6, 2005, **TITUS NICKENS,** in the presence of two V-Not Gang associates, in the vicinity of 100 Hall Avenue, Syracuse, attempted to rob two drug customers of their money and valuables by pointing a shotgun at them as they sat in their car, at which time a struggle ensued, the gun discharged, shooting one of the V-Not members in the arm.

3. On or about December 11, 2005, **RIADDA TRAVET** possessed a loaded .357 revolver in the 4600 block of South Salina Street, Syracuse.

4. On or about January 4, 2006, **JEFFREY POWELL** possessed approximately 2.1 grams of cocaine base (crack) and $240 in U.S. currency in the 200 block of West Newell Avenue, Syracuse.

5. On or about April 19, 2006, **CHRISTOPHER MIKE** possessed a quantity of cocaine base (crack) and $128 in U.S. currency at 161 Bertram Place, Syracuse.

6. On or about December 7, 2006, **DWAYNE HESTER,** in the presence of **KENNETH JACKSON,** possessed approximately 2.5 grams of cocaine base (crack) at 708 James Street, Apt. 229, Syracuse.

7. On or about May 28, 2007, **TITUS NICKENS,** in the presence of other V-Not Gang members in the 1000 block of Ballantyne Road, Syracuse, shot a rival O-Block Gang member in the stomach with a 9 mm handgun that had been involved in at least five previous shootings in and around V-Not Gang territory in 2007.

8. On or about October 24, 2007, **KAHARI SMITH** possessed approximately 1.2 grams of cocaine base (crack) in the presence of **TITUS NICKENS, DWAYNE HESTER,** and **DONALD JOHNSON, JR.**, in the 200 block of Seneca Drive, Syracuse, at which time a loaded starter pistol, which resembled a .38 caliber pistol, was found on the ground near all of them.

9. On or about November 7, 2007, **KAHARI SMITH, JERMEERE MCKINNON, TITUS NICKENS, JEFFREY POWELL,** and others, possessed more than 18 grams of cocaine base (crack), a quantity of marijuana, and more than $900 in U.S. currency, at 262 Seneca Drive, Apartment 1E, Syracuse.

10. On or about March 1, 2008, **DONALD JOHNSON, JR.** possessed approximately 2 grams of cocaine base (crack) in a car used by at least one other V-Not Gang member in the 6200 block of South Salina Street, Syracuse.

11. On or about June 9, 2008, **DWAYNE HESTER,** in a vehicle with **KENNETH JACKSON** and another V-Not Gang member in the 200 block of Green Street, Syracuse, possessed approximately 2 grams of cocaine base (crack) and $1,198 in U.S. currency.

12. On or about June 19, 2008, **HABAKUKK NICKENS** possessed approximately 12 grams of cocaine base (crack) in the 100 block of Grove Street, Syracuse.

13. On or about March 23, 2009, **KAHARI SMITH** possessed approximately 4.6 grams of cocaine base (crack) and $361 in U.S. currency in the presence of **DONALD JOHNSON, JR., HABAKUKK NICKENS,** and another person, in the 1600 block of Teall Avenue, Syracuse.

14. On or about May 2, 2009, **HABAKUKK NICKENS** and **CHRISTOPHER MIKE,** in the presence of **RIADDA TRAVET**, assaulted a person in a residence on Columbus Avenue, Syracuse, and then stole a .50 caliber handgun from the premises.

15. On or about May 4, 2009, **HABAKUKK NICKENS** possessed a .38 caliber handgun at a residence on Crippen Place, Syracuse, and fired several shots at others from that handgun.

16. On or about May 4, 2009, **HABAKUKK NICKENS**, in the presence of **RIADDA TRAVET**, fired a handgun several times at a person in a building on West Brighton Avenue, Syracuse.

17. On or about May 21, 2009, **RIADDA TRAVET** threatened a witness who was going to testify against **HABAKUKK NICKENS** in relation to the shooting that occurred on May 4, 2009.

18. On or about June 3, 2009, **DONALD JOHNSON, JR.** possessed approximately 8 grams of cocaine base (crack) and $360 in U.S. currency in a car in the 1800 block of South Avenue, Syracuse.

19. On or about November 1, 2009, **KAHARI SMITH, RIADDA TRAVET,** and **JEFFREY POWELL** were together in Elk Block Gang territory in Syracuse when **POWELL** shot an Elk Block Gang member in the head.

20. On or about December 31, 2009, **HABAKUKK NICKENS** attempted to shoot two rival Elk Block Gang members in a barber shop in the 2000 block of South Salina Street, Syracuse.

21. On or about June 11, 2010, **CHRISTOPHER MIKE** possessed approximately 2 grams of cocaine base (crack) and $1,020 in U.S. currency in the 1200 block of Midland Avenue, Syracuse.

22. On or about August 8, 2010, **HABAKUKK NICKENS** possessed approximately 2.69 grams of cocaine base (crack) and a digital scale in a vehicle in the vicinity of 820 West Brighton Avenue.

23. On or about October 23, 2010, **KAHARI SMITH, CHRISTOPHER MIKE, JEFFREY POWELL, HABAKUKK NICKENS, TITUS NICKENS, KENNETH JACKSON,**

**DWAYNE HESTER,** and other V-Not Gang members engaged in a gang fight with multiple members of the Bricktown Gang at the Juke Box night club in Syracuse.

24. On or about October 23, 2010, **KAHARI SMITH, CHRISTOPHER MIKE, JEFFREY POWELL, KENNETH JACKSON**, and at least one other V-Not Gang member, were together in a car when **KENNETH JACKSON** fired at least 21 shots from an AK-47 assault rifle into a Bricktown Gang member's house on West Brighton Avenue, Syracuse.

25. On or about November 26, 2010, **KAHARI SMITH, JEFFREY POWELL, HABAKUKK NICKENS,** and two other V-Not Gang members, were together in a vehicle on a highway in Syracuse when **SMITH** fired several shots into a car containing multiple Bricktown Gang members, killing Kihary Blue and injuring Jarrell Williams.

26. On or about January 4, 2011, **NATHAN KING** fired several shots from a handgun into the home of a rival Bricktown Gang member on Armstrong Place, Syracuse, in retaliation for a previous shooting by Bricktown Gang members of **TITUS NICKENS** and **KAHARI SMITH** on October 28, 2010 on Interstate 81 in Syracuse.

27. On or about March 18, 2011, **KENNETH JACKSON** and **DONALD JOHNSON, JR.** shot at a Bricktown Gang member in the vicinity of 1919 South State Street, Syracuse.

28. On or about March 19, 2011, **KAHARI SMITH** shot Bricktown Gang member Jaycee Floyd in the leg in the 500 block of Oakwood Avenue, Syracuse.

29. On or about May 26, 2011, **JEFFREY POWELL,** in the presence of **KENNETH JACKSON** and **DWAYNE HESTER**, sold approximately 1.8 grams of cocaine base (crack) to a customer in the area of Hickory and Lodi Streets, Syracuse.

30. On or about June 1, 2011, **JEFFREY POWELL** sold approximately 3.5 grams of cocaine base (crack) to a customer in the area of Hickory and Lodi Streets, Syracuse.

31. On or about June 22, 2011, **JEFFREY POWELL** directed fellow V-Not Gang member **JERMEERE MCKINNON** to sell a .22 caliber handgun to a person, and **JERMEERE MCKINNON** thereafter delivered to the person in Syracuse a starter pistol that closely resembled a .22 caliber handgun.

32. On or about June 27, 2011, **JEFFREY POWELL,** in the presence of **DWAYNE HESTER,** possessed two 9 millimeter handguns and a quantity of cocaine base (crack) on Lodi Street, Syracuse.

33. On or about July 27, 2011, **JEFFREY POWELL** sold a quantity of cocaine base (crack) to two customers in the area of Hickory and Lodi Streets, Syracuse.

34. On or about July 28, 2011, **JEFFREY POWELL** sold approximately 1.1 grams of cocaine base (crack) to a customer in the area of Hickory and Lodi Streets, Syracuse.

35. On or about September 28, 2011, **JERMEERE MCKINNON,** in the presence of **NATHAN KING** and another now-deceased V-Not Gang member, sold a .380 caliber handgun to a person for $500 in the vicinity of 602 Atlantic Avenue, Syracuse.

36. On or about October 18, 2011, **JERMEERE MCKINNON** negotiated sales of cocaine base (crack) to three customers in the 4600 block of South Salina Street, Syracuse.

37. On or about October 18, 2011, **JERMEERE MCKINNON** was driven in a car by **NATHAN KING** to the 100 block of Calthrop Avenue, Syracuse, where he attempted to sell a quantity of cocaine base (crack).

38. On or about December 24, 2011, **CHRISTOPHER MIKE** and fellow V-Not Gang member Sherman Jackson attempted to rob one or more rival gang members in the vicinity of South Alvord Street and Highland Street, Syracuse, at which time **CHRISTOPHER MIKE** fired a .22 caliber handgun at the rival gang members hitting one of them in the back and then was shot, and Sherman Jackson suffered fatal stab wounds.

39. On or about January 12, 2012, **DWAYNE HESTER** possessed approximately 4.2 grams of cocaine base (crack), a digital scale, $300 in U.S. currency, rap lyrics referencing the V-Not and Bricktown gangs, and mail sent from various incarcerated V-Not Gang members, one of which referenced a possible source of cocaine for the V-Not Gang in Atlanta, Georgia.

## SPECIAL SENTENCING ALLEGATIONS

**The Grand Jury further alleges that:**

1. From at least 2003, the exact date being unknown to the grand jury, and continuing thereafter up to the date of the indictment, in the Northern District of New York and elsewhere, the defendants,

**KAHARI SMITH, a/k/a Kiss,**
**HABAKKUK NICKENS, a/k/a HB,**
**JEFFREY POWELL, a/k/a Ghost,**
**KENNETH JACKSON, a/k/a Karome,**
**TITUS NICKENS, a/k/a Tit,**
**RIADDA TRAVET, a/k/a Rico,**
**CHRISTOPHER MIKE, a/k/a Jah or C-Mike,**
**JERMEERE MCKINNON, a/k/a Hood,**
**NATHAN KING, a/k/a Nate,**
**DWAYNE HESTER, a/k/a Black, and**
**DONALD R. JOHNSON, JR., a/k/a D-Jigga,**

and others known and unknown to the Grand Jury, combined, conspired, confederated, and agreed with each other to knowingly and intentionally distribute 280 grams or more of cocaine base (crack

cocaine), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); all in violation of Title 21, United States Code, Section 846.

2. On or about November 27, 2010, in the Northern District of New York, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the V-Not Gang, and for the purpose of gaining entrance to and maintaining and increasing position in the V-Not Gang, an enterprise engaged in racketeering activity, defendant

**KAHARI SMITH**

and others known and unknown, unlawfully committed an act of murder, to wit, with the intent to cause the death of another person, caused the death of such person or of a third person, the victim being Kihary Blue, in violation of New York Penal Law Section 125.25(1) and Title 18, United States Code, Section 1959(a)(1).

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

### Murder of Kihary Blue In Aid Of Racketeering Activity

1. Paragraphs 1 through 12 of Count One are incorporated and re-alleged herein.

2. At all times relevant to this Indictment, the enterprise described in paragraphs 1 through 12 of Count One, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving:

(1) murder, in violation of New York Penal Law, Sections 125.25, 110.05, and 105.17;

(2) robbery, in violation of New York Penal Law, Sections 160.05, 160.10, and 160.15;

(3) conspiracy to possess with intent to distribute cocaine base (crack) and marijuana, as well

as possession with intent to distribute and distribution of cocaine base (crack) and marijuana, in violation of Title 21, United States Code, Sections 841(a) and 846; and

(4) multiple acts indictable under the federal statute prohibiting witness tampering, specifically, Title 18, United States Code, Section 1512(b)(3).

3. On or about November 27, 2010, in the Northern District of New York, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the V-Not Gang, and for the purpose of gaining entrance to and maintaining and increasing position in the V-Not Gang, an enterprise engaged in racketeering activity, defendant

**KAHARI SMITH**

and others known and unknown, unlawfully committed an act of murder, to wit, with the intent to cause the death of another person, caused the death of such person or of a third person, the victim being Kihary Blue, in violation of New York Penal Law, Section 125.25(1).

All in violation of Title 18, United States Code, Section 1959(a)(1).

Dated: ~~April , 2012~~ March 29, 2012

A TRUE BILL, *Name Redacted

FOREPERSON

RICHARD S. HARTUNIAN
UNITED STATES ATTORNEY

By:
John M. Katko
Assistant U.S. Attorney
Bar Roll No. 502457